**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| WOLVERINE BARCODE IP LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>7-ELEVEN, INC.,<br><br>               Defendant. | **Civil Action No.: 7:25-cv-00207-DC-DTG**<br><br><br>**JURY TRIAL DEMANDED**<br><br>█████████████████ |

**DEFENDANT'S MOTION TO TRANSFER VENUE
<u>TO THE NORTHERN DISTRICT OF TEXAS</u>**

## TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................................. 1

   A.    Wolverine accuses functionality that is developed, maintained, integrated, tested, and deployed primarily in and from Irving, Texas. ........................................ 1

   B.    SEI's likely witnesses are located in the NDTX. .............................................. 2

   C.    Wolverine has no substantial connection to the WDTX. .................................. 2

II.    LEGAL STANDARD ..................................................................................... 3

III.    ARGUMENT ............................................................................................... 4

   A.    Wolverine could have filed this action in the NDTX. ....................................... 4

   B.    The NDTX is a clearly more convenient venue than the WDTX. ....................... 5

      1.    Relative ease of access to sources of proof. ............................................. 6

      2.    Availability of compulsory process. ......................................................... 9

      3.    Inconvenience to willing witnesses. ......................................................... 9

      4.    All other practical problems. ................................................................... 11

      5.    Court congestion. .................................................................................... 11

      6.    Local interest. ......................................................................................... 12

      7.    Forum familiarity with the law and avoidance of unnecessary conflicts of laws.. 14

IV.    CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*10Tales, Inc. v. TikTok Inc.*
No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ............... 6, 11, 12, 14

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*
No. 6:150cv00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016)................................. 4

*Browning v. Sw. Airlines Co.*
No. 1:17-CV-556-RP, 2017 WL 6757577 (W.D. Tex. Dec. 21, 2017)........................... 6, 7, 9, 10

*Defense Distributed v. Bruck*
30 F.4th 414, 434 (5th Cir. 2022) ................................................................... 13

*DynaEnergetics Eur. GMBH v. Hunting Titan, Inc.*
No. 6:20-CV-00069-ADA, 2020 WL 3259807 (W.D. Tex. June 16, 2020) ............................... 10

*In re Acer America Corp.*
626 F.3d 1252 (Fed. Cir. 2010)...................................................................... 10

*In re Adobe Inc.*
823 F. App'x 929 (Fed. Cir. 2020) .................................................................. 4

*In re Apple Inc.*
818 F. App'x 1001 (Fed. Cir. 2020) ................................................................ 4, 9

*In re Apple Inc.*
979 F.3d 1332 (Fed. Cir. 2020)....................................................... 4, 6, 7, 11, 12, 13

*In re Genentech, Inc.*
566 F.3d 1338 (Fed. Cir. 2009)...................................................... 4, 6, 9, 12

*In re Google Inc.*
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ..................................... 9, 11

*In re Google LLC*
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...................................... 8

*In re Hoffmann-La Roche Inc.*
587 F.3d 1333 (Fed. Cir. 2009)..................................................................... 13

*In re Juniper Networks, Inc.*
14 F.4th 1313 (Fed. Cir. 2021) ................................................................. 13

*In re Meta Platforms, Inc.*
No. 2023-143, 2023 WL 7118786 (Fed. Cir. Oct. 30, 2023) ....................... 12

*In re Microsoft Corp.*
630 F.3d 1361 (Fed. Cir. 2011) ................................................................. 13

*In re Nintendo Co., Ltd.*
589 F.3d 1194 (Fed. Cir. 2009) ................................................................... 4

*In re Samsung Elecs. Co., Ltd.*
2 F.4th 1371 (Fed. Cir. 2021) .................................................... 4, 11, 13, 14

*In re TikTok, Inc.*
85 F.4th 352 (5th Cir. 2023) .............................................................. 5, 8, 14

*In re TracFone Wireless, Inc.*
852 F. App'x 537 (Fed. Cir. 2021) ............................................................... 4

*In re TS Tech USA Corp.*
551 F.3d 1315 (Fed. Cir. 2008) ................................................................... 3

*In re Volkswagen AG*
371 F.3d 201 (5th Cir. 2004) ............................................................. 3, 4, 10

*In re Volkswagen of Am., Inc.*
545 F.3d 304 (5th Cir. 2008) ........................................... 3, 4, 6, 10, 11, 12

*KAJEET, INC. Plaintiff v. TREND MICRO, INC., Defendants*
No. 6:21-CV-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022) ......... 7

*MasterObjects, Inc. v. Facebook, Inc.*
No. 6-20-CV-00087-ADA, 2021 WL 7449852 (W.D. Tex. July 13, 2021) ............................ 6, 11

*Ocean Semiconductor LLC v. Renesas Elecs. Corp.*
No. 6:20-CV-1213-ADA, 2021 WL 12318134 (W.D. Tex. Dec. 3, 2021) ................................ 8, 9

*QES Pressure Control LLC v. Zurich Am. Ins. Co.*
No. 4:20-CV-50-DC-DF, 2020 WL 6821335 (W.D. Tex. Aug. 21, 2020)
*report and recommendation adopted*
No. P:20-CV-00050-DC, 2020 WL 13337751 (W.D. Tex. Oct. 21, 2020) ................... 6, 9, 11, 12

*Webroot, Inc. v. Sophos Ltd.*
No. W-22-CV-00240-ADA-DTG, 2024 WL 5294040 (W.D. Tex. Feb. 15, 2024) ...................... 8

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................... 1, 3

Defendant 7-Eleven, Inc. ("SEI") respectfully requests that the Court transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). None of the evidence in this case has any connection to the WDTX. Rather, SEI, known witnesses, and evidence are all found in and around Irving, Texas (in the NDTX). This is unsurprising given that the development, testing, maintenance, and deployment of the accused functionality is overseen by individuals in this location. Plaintiff Wolverine Barcode IP LLC ("Wolverine") also has no real connection to the WDTX. While it is a Texas corporation, it was formed roughly eleven months ago and its mailing address is a residential house in Novato, California, which also appears to be the home of a relative of the sole inventor of the '689 Patent (defined below). As such, all the key *Volkswagen* factors favor transfer to NDTX, and none favor keeping this case in the WDTX.

## I.    STATEMENT OF FACTS

### A.  Wolverine accuses functionality that is developed, maintained, integrated, tested, and deployed primarily in and from Irving, Texas.

Wolverine's Complaint accuses the barcode functionality of the 7-Eleven mobile application ("Accused Functionality") of infringing claims of U.S. Patent No. 9,280,689 (the "'689 Patent"). *See* Dkt. 1 at 3, Ex. B to Wolverine's Complaint for Patent Infringement. As explained further below, the Accused Functionality has no connection to the WDTX, instead being developed, maintained, and deployed by SEI from the NDTX. Decl. of S. Kinch ¶¶ 7-9.

Evidence that might be relevant to this litigation can be found in various locations, including Irving, Texas, and ███████████████████. Decl. of S. Kinch ¶ 10. ████ ████████████████, is much closer to Dallas and the NDTX than to Midland/Odessa and the WDTX. SEI stores additional documents that may be relevant to this litigation at remote data centers throughout the United States, none of which are located in the WDTX. Decl. of S. Kinch ¶¶ 10-11.

1

**B.  SEI's likely witnesses are located in the NDTX.**

SEI is headquartered in Irving, Texas, which is in the NDTX. Decl. of S. Kinch ¶ 3. SEI's management, integration, maintenance, and development teams are located in or near Irving, Texas. *Id*. As of the date of this motion, SEI has roughly 1,000 employees who work in or near its Irving headquarters. Decl. of S. Kinch ¶ 4. SEI owns and operates certain 7-Eleven stores in the WDTX, but these stores do not offer anything unique to the litigation of this case. Decl. of S. Kinch ¶¶ 4, 12. In fact, SEI has over 13,000 properties throughout the United States and Canada. Decl. of S. Kinch ¶ 12. No franchisee or retail employee in the stores located in the WDTX has unique information that would not be available at retail stores in the NDTX. Decl. of S. Kinch ¶ 12.

As explained above, the Accused Functionality in the 7-Eleven mobile application was developed primarily by SEI, with limited help from outside contractors, neither of which are located in the WDTX. Decl. of S. Kinch ¶ 7. The Accused Functionality is integrated, maintained, tested, and deployed by SEI from the NDTX. Decl. of S. Kinch ¶¶ 7-9. To the extent there are any relevant SEI technical witnesses, they are located in the NDTX. Decl. of S. Kinch ¶¶ 7, 9.

SEI is not aware of any employees with relevant knowledge concerning the claims asserted against SEI that are in the WDTX, including the location identified in the Complaint at Paragraph 2. Dkt. 1 at 1, ¶ 2. The employees working at SEI franchises are not involved with the Accused Functionality in a way that is meaningful to this case. Decl. of S. Kinch ¶ 12.

**C.  Wolverine has no substantial connection to the WDTX.**

Wolverine has no substantial connections to the WDTX. According to the Complaint, "Random Chat" is a Texas limited liability company with its principal place of business in Austin, Texas. Dkt. 1 at 1, ¶ 1 (the Complaint contains a typographical error for the named Plaintiff). But a search of taxable entities in Texas reveals Wolverine was formed just eleven months ago and does not even have a Texas address. *See* Ex. 1 (screenshot of comptroller.texas.gov website). In

fact, the address listed is residential and located in Novato, California. *Id*. This address is the same as that listed for Andrew M. Ling P.C. when the '689 Patent was assigned to his company from the sole named inventor, Marvin T. Ling. *See* Ex. 2 (screenshot of the USPTO patent assignment search website). Wolverine's connection to the WDTX is thus recent and paper thin, with a much stronger connection to California, where Wolverine's principal, and seeming relative of the sole inventor, resides.

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In analyzing a motion to transfer under § 1404(a), the law of the regional circuit applies. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). First, under § 1404(a), the moving party must show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").

Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II* at 315. In evaluating convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The convenience of the witnesses is the most important factor in the transfer analysis. *See In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020) ("*Apple I*"); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:150cv00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016). Without a single witness in the transferor venue, there is "nothing on the other side of the ledger, [and] the factor strongly favors transfer." *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). Even in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re TracFone Wireless, Inc.*, 852 F. App'x 537, 540 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332, 1347 (Fed. Cir. 2020) ("*Apple II*"); *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).[1]

## III.    ARGUMENT

The Court should transfer this case to the NDTX because (1) Wolverine could have originally filed this case in the NDTX and (2) the NDTX is clearly a more convenient venue than the WDTX under the *Volkswagen* factors.

### A.  Wolverine could have filed this action in the NDTX.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312 (quoting 28 U.S.C. § 1391). SEI maintains its headquarters in Irving, Texas (which is located in the NDTX). Decl. of S. Kinch ¶ 3. Under Wolverine's broad allegations, SEI conducts allegedly infringing activity in the NDTX. Dkt. 1 at 3, ¶ 8 (alleging that SEI "maintains, operates, and administers systems, products, and services that conduct[] offline transactions that use a barcode as a method of personal identification").

---

[1] The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314-15. Nor is the location of counsel. *Volkswagen I*, 371 F.3d at 206.

These systems allegedly include the 7-Eleven mobile application, which is available nationwide. Dkt. 1 at 3, ¶ 9 (Exhibit B to the Complaint); Decl. of S. Kinch ¶ 6, 12. Thus, venue is proper in the NDTX under 35 U.S.C. § 1400(b).

**B. The NDTX is a clearly more convenient venue than the WDTX.**

As outlined below, nearly half of the private and public interest factors—including the important convenience of witnesses factor—favor transfer, the others are neutral, and none favor keeping the case in WDTX.

| *Volkswagen* Factor | Weight |
|---|---|
| Relative Ease of Access to Sources of Proof | Favors Transfer |
| Availability of Compulsory Process | Neutral |
| Inconvenience to Willing Witnesses | Favors Transfer |
| All Other Practical Problems | Neutral |
| Court Congestion | Neutral |
| Local Interest | Favors Transfer |
| Forum Familiarity with the Law | Neutral |
| Avoidance of Unnecessary Conflicts of Law | Neutral |

The Fifth Circuit recently found that transfer was appropriate under similar circumstances. "In summary, factors one and three weigh in favor of transfer. All other factors are neutral with respect to transfer. A district court abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case ... are in the transferee forum.' *Radmax*, 720 F.3d at 290; *see also Volkswagen*, 545 F.3d at 318 ('The only connection between this case and the [transferor forum] is plaintiffs' choice to file there.')." *In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023).

Additionally, this Court has granted a motion to transfer in *MasterObjects, Inc. v. Facebook, Inc.* where the Court found only two factors favored transfer, one weighed against transfer, and the rest were neutral. *See MasterObjects, Inc. v. Facebook, Inc.*, No. 6-20-CV-00087-ADA, 2021 WL 7449852, at *1 (W.D. Tex. July 13, 2021). Here, there is even more reason to transfer, where almost half of the factors favor transfer, and the others are neutral. This Court has also granted a motion to transfer where "[a]ccess to sources of proof, convenience of the witnesses, and local interests all weigh in favor of transfer. On the other hand, no factors weigh against transfer." *QES Pressure Control LLC v. Zurich Am. Ins. Co*., No. 4:20-CV-50-DC-DF, 2020 WL 6821335, at *7 (W.D. Tex. Aug. 21, 2020), *report and recommendation adopted*, No. P:20-CV-00050-DC, 2020 WL 13337751 (W.D. Tex. Oct. 21, 2020). *See also Browning v. Sw. Airlines Co.*, No. 1:17-CV-556-RP, 2017 WL 6757577 (W.D. Tex. Dec. 21, 2017) (this Court finding that transfer from WDTX to NDTX was warranted as the factors considered (access to proof, witness convenience, and local interest) favored transfer). The Court should do the same here.

### 1.  Relative ease of access to sources of proof.

This factor favors transfer because: (1) potentially relevant evidence is located in or near the NDTX; (2) SEI employees, who generate, use, and maintain potentially relevant evidence are located in Irving, Texas; and (3) there is little, if any, relevant evidence in the WDTX.

The relative ease of access to sources of proof considers the location of relevant evidence. *10Tales, Inc. v. TikTok Inc*., No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021); *Volkswagen II,* 545 F.3d at 316. In patent infringement actions, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Apple II*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). The relevant

inquiry is to compare the two venues to determine the relative ease of access to sources of proof in the two forums. *See Apple II*, 979 F.3d at 1340.

First, the relevant evidence is located in and near the NDTX and Irving. *See supra*, Section I.A. This Court has recognized that the Fifth Circuit has made clear that even in light of technological developments, the physical location of evidence is still an important factor to be considered. *Browning*, 2017 WL 6757577, at *3.

The design, development, maintenance, testing, and deployment of the Accused Functionality takes place primarily from SEI's headquarters in Irving. Decl. of S. Kinch ¶ 7. The relevant technical documents are generated primarily in Irving and ████████████████████

████████. Decl. of S. Kinch ¶¶ 9-10. ████ is much closer to the transferee venue of the NDTX (specifically Dallas) than Midland/Odessa. Exs. 3 and 4 (Google Maps screenshots showing ████████████████, Dallas Division courthouse and ██████████████████, Midland/Odessa Division courthouse). *Browning*, 2017 WL 6757577, at *3 ("The relative ease of access to sources of proof also favors the Dallas division. All relevant records are located in the headquarters of Southwest, which is in Dallas.").

The location of these relevant documents means that access in the NDTX (specifically Dallas) is more convenient than Midland/Odessa. This Court has used a comparison of distance in at least one prior case. *See KAJEET, INC. Plaintiff v. TREND MICRO, INC., Defendants*, No. 6:21-CV-389-ADA, 2022 WL 126490, at *3 (W.D. Tex. Jan. 12, 2022) ("Because the documents in Irving are 90 miles from Waco, but roughly 1,450 from the NDCA, the access to sources of proof would be relatively easier—by 1,360 miles—in the WDTX.").

Finally, for the SEI documents that are not located ██████████████, SEI uses various cloud service providers to store documents throughout the country. Decl. of S. Kinch ¶ 10.

These data centers are equally accessible from the NDTX as the WDTX, none are located in the WDTX, and thus the data centers do not weigh for or against transfer. Decl. of S. Kinch ¶ 10.

Second, SEI employees, who generate, use, and maintain potentially relevant documents and evidence are located in Irving. Decl. of S. Kinch ¶¶ 7-9. Consideration of the location of the creators and custodians of documents is appropriate under this factor. *Webroot, Inc. v. Sophos Ltd.*, No. W-22-CV-00240-ADA-DTG, 2024 WL 5294040, at *3 (W.D. Tex. Feb. 15, 2024) ("This factor entails at least two discrete inquiries when addressing electronic documents: the locations where electronic documents are stored, and the locations of the creators and custodians of the electronic documents."); *see also In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *Ocean Semiconductor LLC v. Renesas Elecs. Corp.*, No. 6:20-CV-1213-ADA, 2021 WL 12318134, at *3 (W.D. Tex. Dec. 3, 2021).

Third, there is little, if any, relevant evidence in the WDTX, from either SEI or Wolverine. SEI does not have unique working files or documents relevant to this case located in the WDTX. Decl. of S. Kinch ¶¶ 10-11. As noted above, SEI records related the Accused Functionality and technical documents are primarily stored ███████████████████. There are additional data centers around the United States, none of which exist in the WDTX. Decl. of S. Kinch ¶ 10.

Further, as explained above in Section I.C., Wolverine is unlikely to have any documents relevant to this case in the WDTX. Its connection to this district is paper thin, with the entity having been formed in late 2024, seemingly for the sole purpose of litigation. *See* Dkt. 1 at 4, ¶ 13 ("Plaintiff has never sold a product."). Wolverine's mailing address is a residential address in Novato, California. *See* Ex. 1 (Texas franchise tax registration). These facts support transfer of the case. "The question is *relative* ease of access, not *absolute* ease of access. *Radmax*, 720 F.3d at 288. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok*, 85 F.4th at 358 (internal quotation marks omitted); *see also*

*Ocean Semiconductor*, 2021 WL 12318134, at *4 ("Ocean fails to show that any party documents reside in the WDTX."); *QES Pressure Control*, 2020 WL 6821335, at *5 ("QESPC does not identify a single document or source of proof that is located in the Pecos Division of the Western District of Texas.").

As SEI's documents are located in and near the NDTX, its custodians are in the NDTX, and SEI (and likely Wolverine) has no documents in the WDTX, this factor favors transfer.

### 2. Availability of compulsory process.

This factor focuses on unwilling, non-party witnesses. SEI is not aware of any potentially unwilling third-party witnesses. The Complaint does not identify any third-party witnesses, much less those that are unwilling. Thus, this factor is neutral.

### 3. Inconvenience to willing witnesses.

The single most important factor in the transfer analysis—the convenience for willing witnesses—weighs in favor of transfer. *See In re Apple Inc*., 818 F. App'x 1001, 1003 (Fed. Cir. 2020); *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017); *Genentech*, 566 F.3d at 1342. Defendant's likely witnesses are located in Irving, Texas in the NDTX. *See supra*, Section I.B. Likely witnesses include technical employees who develop, maintain, integrate, test, and deploy the Accused Functionality from Irving, Texas. Decl. of S. Kinch ¶¶ 7-9.

These witnesses in and around Irving are a short distance away from the Dallas courthouse in the NDTX. *See* Ex. 5 (driving information from Irving to NDTX, Dallas Division courthouse). In contrast, if the case were to remain in the WDTX, witnesses would need to travel roughly 320 miles to the WDTX, having to drive almost five hours or take a plane. Exs. 6 and 7 (flight and driving information from Irving to WDTX, Midland/Odessa Division courthouse). *See Browning*,

2017 WL 6757577, at *2 ("Dallas is more than 100 miles away from Austin, which means that the costs of attendance for the witnesses would be substantially higher in Austin than in Dallas.").

This travel burden is significant and has often been cited as a key reason why transfer is appropriate. *See, e.g.*, *Volkswagen II*, 545 F.3d at 317. The length of travel also imposes additional burdens, such as meal and lodging expenses. *Volkswagen I*, 371 F.3d at 204-205*; see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

This Court has found that this factor favors transfer when nearly all potential witnesses are located in or around the transferee venue. *See Browning*, 2017 WL 6757577, at *2 ("All of the witnesses mentioned by Southwest are located in or near Dallas."); *see also DynaEnergetics Eur. GMBH v. Hunting Titan, Inc.*, No. 6:20-CV-00069-ADA, 2020 WL 3259807, at *7 (W.D. Tex. June 16, 2020).

In contrast, there are no identified witnesses who reside in the WDTX. Marvin T. Ling, the sole named inventor, is listed on the face of the '689 Patent as residing in Scottsdale, Arizona. *See* Dkt. 1-1. As noted above, Wolverine's sole principle, Andrew Ling, appears to be located in Novato, California. *See* Exs. 1 and 2. Both would have to travel regardless of the venue in Texas, and travelling from California to Dallas is easier than from California to Midland/Odessa. There are no direct flights to Midland/Odessa from the airport near Novato, but there are direct flights to Dallas. *See* Exs. 8 and 9 (showing flights from Charles M. Schulz-Sonoma County Airport in Santa Rosa (near Novato) to Midland and Dallas). Flying from San Francisco to Midland is no better and takes at the shortest roughly five hours (with no direct flights). *See* Ex. 10 (showing flight times from San Francisco to Midland). Flying from San Francisco to Dallas takes three and a half hours. *See* Ex. 11 (showing flight times from San Francisco to Dallas).

Further, Defendants are unaware of any non-party witnesses for whom the WDTX would be a more convenient forum. "As the case now stands, none of the potential witnesses reside in the

Western District of Texas." *QES Pressure Control*, 2020 WL 6821335, at *6. Thus, the convenience to the party and non-party witnesses—the vast majority of whom are located in Irving—weighs in favor of transfer under this factor. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

In sum, it would be clearly more convenient for the NDTX and Irving-based witnesses to attend trial in the NDTX. *Volkswagen II*, 545 F.3d at 317 (recognizing the "obvious conclusion" that "it is more convenient for witnesses to testify at home"); *see Apple II*, 979 F.3d at 1341-42. For SEI's witnesses, the NDTX is clearly more convenient. Even for Wolverine's witnesses, the NDTX is arguably more convenient. In total, a significant amount of the witnesses are located in the NDTX and none are in the WDTX, thus this factor favors transfer. *See MasterObjects*, 2021 WL 7449852, at *5 (weighing factor in favor of transfer to NDCA where there are a "significant amount of witnesses in California" and not "a single relevant witness in WDTX, let alone Texas").

### 4. All other practical problems.

The final private interest factor, "all other practical problems that make trial of a case easy, expeditious, and inexpensive" (*Volkswagen II*, 545 F.3d at 315), is neutral. Even though there are co-pending cases involving the same asserted patent before this Court, there is also one pending in the NDTX. Ex. 12 (Lex Machina screenshot of Wolverine Barcode cases). And as this Court has recognized, even if there were co-pending cases, that fact would not outweigh the Defendant's strong presence in the transferee district. *10Tales*, 2021 WL 2043978, at *4 (citing *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017)).

### 5. Court congestion.

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *10Tales*, 2021 WL 2043978, at *5 (citing *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963)). As the Federal Circuit has observed, this is the "most speculative"

factor, as "case-disposition statistics may not always tell the whole story." *In re Genentech, Inc.*, 566 F.3d at 1347. This factor is neutral here.[2] The median time to trial between the NDTX and the WDTX is nearly identical - 652 days for the NDTX versus 651 days in the WDTX. *See* Exs. 13 and 14 (Lex Machina statistics).

Further, this case is in its infancy; SEI just responded to the Complaint on July 28, 2025, and neither discovery nor a *Markman* hearing has occurred. As this Court found in *10Tales*, "a transfer at this stage of litigation would not likely create any meaningful delays." *10Tales*, 2021 WL 2043978, at *5 (finding this factor neutral after comparing court congestion between NDCA and WDTX). Both the transferor and the transferee jurisdictions will proceed to trial along a reasonable timeline and thus this factor is neutral. *See QES Pressure Control*, 2020 WL 6821335, at *6.

### 6. Local interest.

The second public interest factor - whether there is a local interest in deciding local issues at home - favors transfer. *See Volkswagen II*, 545 F.3d at 317. Under this factor, the Court must consider whether there are "significant connections between a particular venue and the events that gave rise to a suit." *10Tales*, 2021 WL 2043978, at *5 (quoting *Apple II*, 979 F.3d at 1345). "One event particularly relevant to this analysis is the location of where 'the accused products were designed, developed, and tested.'" *Id.* Additionally, "the sale of an accused product offered

---

[2] The Federal Circuit has also found that where the plaintiff is not competing in the market, as is the case here with Wolverine, this factor should not weight against transfer. *In re Meta Platforms, Inc.*, No. 2023-143, 2023 WL 7118786, at *2 (Fed. Cir. Oct. 30, 2023) (quoting *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)) ("this factor should not weigh against transfer when the patentee 'is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution.'").

nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

This factor weighs in favor of transfer. SEI's strongest presence is in Irving, Texas, and the events giving rise to this case have "significant connections" with the NDTX. As explained above, under Wolverine's broad allegations, SEI conducts allegedly infringing activity in the NDTX. Dkt. 1 at 3, ¶ 8 (alleging that SEI "maintains, operates, and administers systems, products, and services that conduct[] offline transactions that use a barcode as a method of personal identification"). These systems allegedly include the 7-Eleven mobile application, which is available nationwide. Dkt. 1 at 3, ¶ 9 (Exhibit B to the Complaint); Decl. of S. Kinch ¶ 12. *See supra*, Section I.A.

Additionally, the engineering groups at SEI that are involved in developing, integrating, maintaining, testing, and deploying the Accused Functionality are also primarily located in the NDTX. *See supra*, Section I.B. Thus, the NDTX has a strong local interest in this matter because the research, design, and development of the accused products in the transferee forum are "significant factors" that provide "a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (*citing Apple II*, 979 F.3d at 1344-45); *see also See also Defense Distributed v. Bruck*, 30 F.4th 414, 434 n.25 (5th Cir. 2022) (local-interest factor favored a Texas venue where "research, design, development, manufacturing, and publishing, occurred in and around Austin."); *see In re Hoffmann-La Roche*, 587 F.3d at 1338.

In contrast, neither party has any "significant connections" to the WDTX. Wolverine has no real connection to the WDTX, much less any connections to the events that gave rise to the lawsuit. *See supra*, Section I.C.; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam)) ("little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office to claim a presence in the district for purposes of litigation.").

And while SEI has retail stores in the WDTX that have no specific information related to Plaintiff's patent infringement allegations, these are "general contacts with the forum that are untethered to the lawsuit" and should be discounted. *See In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (citations omitted) ("The fact that infringement is alleged in the Western District of Texas gives that venue no more of a local interest than the Northern District of California or any other venue."); *10Tales*, 2021 WL 2043978, at *5 (finding that "this sort of general presence should not be given much consideration") (internal quotation marks omitted).

### 7. Forum familiarity with the law and avoidance of unnecessary conflicts of laws.

Finally, the last two factors are neutral, as there are no perceived conflicts of law, and both districts are equally qualified to apply patent law.

## IV.    CONCLUSION

Based on the *Volkswagen* factors discussed above, the NDTX is a "clearly more convenient forum" than the WDTX, as nearly half of the factors favor transfer and the rest are neutral. None of the factors favors keeping the case in the WDTX. Overall, this case is highly similar to the *TikTok* case, where the Fifth Circuit found that "[h]ere, as in *Volkswagen*, not a single factor weighs in favor of refusing transfer. The Western District of Texas contains no relevant evidence, is thousands of miles away from the vast majority of relevant witnesses, and is wholly unconnected to the underlying dispute." *In re TikTok*, 85 F.4th at 366.

Thus, SEI respectfully requests that this Court transfer this case to the NDTX.

DATE: September 25, 2025        Respectfully Submitted,

_/s/ Siddhesh V. Pandit_
Siddhesh V. Pandit, VA Bar No. 75,686 (admitted to practice in the WDTX)
svp@maierandmaier.com
Timothy J. Maier, VA Bar No. 46,354 (_pro hac vice to be submitted_)
tjm@maierandmaier.com
Michael R. Casey, VA Bar No. 43,919 (_pro hac vice to be submitted_)
mrc@maierandmaier.com

**MAIER & MAIER PLLC**
345 South Patrick Street
Alexandria, VA 22314
(703) 740-8322 (phone)
(703) 991-7071 (fax)


Thomas J. Gohn
(TX Bar No. 24097742)
tjg@maierandmaier.com

**MAIER & MAIER PLLC**
8750 N. Central Expressway
Suite 1850
Dallas, Texas 75231
(703) 740-8322 (phone)
(703) 991-7071 (fax)

**_Attorneys for Defendant 7-Eleven, Inc._**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on September 25, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

By:    /s/ *Siddhesh V. Pandit*
       Siddhesh V. Pandit

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule CV-7(g), counsel for SEI conferred in a good faith attempt to resolve the matter by agreement. The parties did not reach an agreement and Wolverine opposes the motion.

By:    /s/ *Thomas J. Gohn*
       Thomas J. Gohn

16